UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BS2 MULTIDATA GMBH,

    Plaintiff/Counter-Defendant,

v.

    Case No. 04-74394

    HON. DENISE PAGE HOOD

A-DAT CORPORATION,

    Defendant/Counter-Plaintiff.
_____/

## AMENDED MEMORANDUM OPINION AND ORDER

**I.    BACKGROUND**

This matter is before the Court on Plaintiff's Renewed Motion for Directed Verdict Pursuant to Fed. R. Civ. P. 50(b) or in the Alternative For a New Trial, filed April 26, 2006. On June 28, 2006, Defendant filed a Brief in Response and Opposition to Plaintiff's Renewed Motion for Directed Verdict.

Also before the Court is Counter-Plaintiff's [Defendant's] Motion for a New Trial on the Issue of Damages, filed April 26, 2006. On May 10, 2006, Plaintiff filed a Response to Counter-Plaintiff's Motion for a New Trial on the Issue of Damages.

This matter was tried by a jury on April 3-7, 2006 and the jury rendered a verdict on April 10, 2006. The jury found Defendant, A-Dat Corp., liable to Plaintiff, BS2 Multidata GmbH, on Plaintiff's breach of contract claim and awarded Defendant damages, in the amount of $140,232.77 Euros. The jury found Plaintiff liable to Defendant on Defendant's tortious interference with advantageous business relationships counterclaim, in the amount of $75,000.00.

**II.    STANDARD OF REVIEW**

## A. Renewed Motion for Directed Verdict (Motion for Judgment as Matter of Law)

Fed.R.Civ.P. Rule 50(a) provides:

> (a) Judgment as a Matter of Law.
>
> (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
>
> (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

Fed.R.Civ.P. 50(a). If the court does not rule on the motion for judgment as a matter of law after the close of all the evidence, the court is considered to have submitted the action to the jury. Fed.R.Civ.P. 50(b). The motion may be renewed by filing a motion no later than 10 days after the judgment has been entered. Fed.R.Civ.P. 50(b).

The standard of review of a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) is to view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999). A district court may not weigh the evidence or make credibility determinations because these are functions for the jury. *Id.* If the nonmovant presents sufficient evidence to raise a material issue of fact for the jury then dismissal is improper under Rule 50(a). *Id.* "[W]henever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ," only then is it appropriate to take the case

away from the jury. *Id.*, *citing O'Neill v. Kiledjian*, 511 F.2d 511, 513 (6th Cir. 1975). As to the "fully heard" requirement of Rule 50(a), the Sixth Circuit has concluded that "it is impossible for this court to review whether, when all reasonable inferences from the evidence are construed in favor of the nonmoving party, a reasonable juror could find in favor of the nonmoving party if he is precluded from presenting the evidence he considers relevant." *Id.*, *citing Francis v. Clark Equip. Co.*, 993 F.2d 545, 555 (6th Cir. 1993).

### B. Motion for New Trial

Pursuant to Fed. R. Civ. P. 50(c):

> (1) If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial.

Fed. R. Civ. P. 59 provides, "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Specific grounds for a new trial have included: that the verdict is against the weight of the evidence; that the damages are excessive; that for other reasons the trial was not fair; that there were substantial errors in the admission or rejection of evidence; that the giving or refusal of instructions were in error; and misconduct of counsel. *Clark v. Esser*, 907 F. Supp. 1069, 1073 (E.D. Mich. 1995); *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F. 2d 789, 790 (6th Cir. 1980). The grant or denial of a new trial is purely within the discretion of the trial court and will not be reversed except upon a showing of abuse of discretion. *Logan v. Dayton Hudson Corp.*, 865 F. 2d 789, 790 (6th Cir. 1989). The trial court has broad discretion in deciding a motion for new trial to prevent a miscarriage of justice. *Clark*, 907 F. Supp. at 1073; *City of Cleveland*, 624 F. 2d at 756; *Fryman*

*v. Federal Crop Ins. Corp.*, 936 F. 2d 244, 248 (6th Cir. 1991).

## III.  APPLICABLE LAW & ANALYSIS

### A.  Plaintiff's Renewed Motion for Directed Verdict or in the Alternative for a New Trial

Plaintiff argues that Defendant's counterclaim of tortious interference should be dismissed and a judgment of dismissal entered in favor of Plaintiff. Plaintiff asserts that Defendant failed to meet its burden on the elements of intentional interference and causation, as required for a finding of tortious interference.

#### 1.  Intentional Interference

Plaintiff contends that Defendant has the burden of proving that the contacts by Plaintiff's principal, Burkhard Spiegel, with General Motors were either wrongful per se or done with malice. (Pl. BS2's Br. in Supp of Renewed Mot. at 4); *See Trepel v. Pontiac Osteopathic Hospital*, 135 Mich. App. 361 (1984). Plaintiff relies on emails and testimony, beginning in the spring of 2004, between Burkhard Spiegel and John Sopoci, and subsequently other individuals at General Motors. Plaintiff asserts that the contents of these communications merely concerned the criteria and development of "middle ware," software that Plaintiff would potentially manufacture for General Motors. (Pl. BS2's Br. in Supp of Renewed Mot. at 4-5). Plaintiff contends that none of these communications constitute illegal or unethical conduct, show malicious intent, or indicate any sales activities directly by Plaintiff to General Motors. *Id.*

Defendant asserts that the parties stipulated to jury instructions on the elements of tortious interference and thus the Court should not revisit the definition of intentional interference. (Def.'s Br. in Resp. and Opp. to Pl.'s Renewed Mot. For Directed Verdict at 6). Defendant asserts that the

4

parties stipulated to Michigan Model Civil Jury Instruction 126.04 which provides,

> [i]mproper interference is conduct that is fraudulent, not lawful, not ethical, or not justified under any circumstances. If defendant's conduct was lawful, it is still improper if it was done without justification and for the purpose of interfering with plaintiff's business relationship or expectancy, but plaintiff must specifically show affirmative acts by defendant that corroborate that defendant had the wrongful purposes of interfering with plaintiff's business relationship or expectancy.

Defendant contends that there is ample evidence in the record to support a finding of improper interference. Specifically, Defendant points to testimony of John Sopoci, of General Motors, detailing emails received from Plaintiff which accuse Defendant of being "untrustworthy" and further testimony that Mr. Sopoci understood the communication as accusing Defendant of being untrustworthy. *Id.* at 7, Ex. C, 28-30.

The Court agrees with Defendant's assertion that Plaintiff sets forth an improper standard for improper interference. First, the Court does not find support in *Trepel v. Pontiac Osteopathic Hospital* for the definition of intentional interference asserted by Plaintiff. *See* 135 Mich. App. 361, 374-75 (holding that to prevail on a theory of tortious interference with a business relationship, the plaintiff must demonstrate the interference was improper as well as intentional). Second, the Court finds it properly instructed on the definition of intentional interference as stated in the jury instructions and Michigan Model Civil Jury Instruction 126.04.

The testimony of Mr. Sopoci regarding emails he received from Plaintiff, as described *supra*, support a finding of intentional interference. The Court finds that there are evidentiary bases upon which the jury could have found Defendant established intentional interference. Plaintiff's Motion for Directed Verdict on the issue of intentional interference is DENIED.

### 2. Causation

Plaintiff also contends that Defendant failed to establish causation. Plaintiff argues that

General Motors decided to abandon the BS2 style data acquisition system and pursue a "modular" data acquisition technology because it was better suited for General Motors' global needs. (Pl. BS2's Br. in Supp of Renewed Mot. at 6, Ex. A). It is Plaintiff's contention that the statements of Burkhard Spiegel and the relationship between Plaintiff and Defendant had no influence on General Motors' decision to stop purchasing from Defendant and to pursue a different data acquisition technology. *Id.*

Plaintiff finds it noteworthy to point out that, according to Mr. Sopoci and Virginia Jacobson, to date General Motors has not purchased any other systems of the type at issue, nor does Ms. Jacobson know why the 60-120 obsolete systems have not yet been replaced. *Id.* Plaintiff argues that, although Ms. Jacobson testified that if certain features were resolved she would have recommended the A-Dat systems to her superiors, there is no evidence that her recommendation would have been implemented. *Id.* at 7

Defendant counters that Ms. Jacobson testified that she and her group were looking for a replacement for the 60-120 obsolete systems and she did not recommend that General Motors purchase the BS2 systems offered by A-Dat because they were unusable for General Motors' needs. (Def.'s Br. in Resp. and Opp. to Pl.'s Renewed Mot. For Directed Verdict at 7, Ex. D, 38-40). However, if Ms. Jacobson and her group had recommended the systems, "it is likely that the other legacy systems also would have been replaced by them." *Id.*, Ex. D, 46.

The Court finds that there was ample evidence by which the jury could have found Defendant established causation. William Fife testified that Ms. Jacobson was the group leader for chassis controls and "was primarily assigned to select the next generation of acquisition systems for brake and chassis and also base brake groups." *Id.*, Ex. E, 8. Given Ms. Jacobson's role at General

6

Motors, it was reasonable for the jury to conclude that a recommendation by Ms. Jacobson to her superiors, as to which data acquisition system to purchase, would have been implemented. Since this issue was exclusively within the purview of the jury and there was an evidentiary basis by which the jury could find Defendant established causation, Plaintiff's Motion for Directed Verdict on the issue of causation is DENIED.

### 3. Plaintiff's Motion for a New Trial

The reasoning behind Plaintiff's Motion for a New Trial, pursuant to Fed. R. Civ. P. 50(b), is that if this Court grants Plaintiff's Motion for a Directed Verdict, and that decision is later reversed, there will be a record of the grounds for a new trial. (Pl. BS2's Br. in Supp of Renewed Mot. at 8). Plaintiff asserts that a new trial should be granted for the following reasons:

1. The jury's award of damages in the amount of $75,000 has no rational connection to the evidence. Specifically, Defendant introduced evidence that General Motors was going to purchase 60 to 120 systems and that Defendant would have made $15,000 net profit on each system. The jury was instructed that lost profits is an element of damages. The verdict of $75,000 would indicate that General Motors purchased only five systems and there is nothing in the record to support such a finding.

2. "Given the jury's long deliberations, their request for clarification of the instructions on tortious interference and its inquiries concerning whether that claim could be determined on a non-unanimous, majority-based vote, it appears the jury's verdict was based upon questionable liability." *See* Docket No. 22, pp. 4, 6, 8, 10. "When the liability that produces the award is impermissibly shrouded with doubt, the court

7

should enter an order for a new trial."

3. The award could have been induced by prejudice against the German Plaintiff or partiality towards the American Counter-Plaintiff.

(Pl. BS2's Br. in Supp of Renewed Mot. at 8-9).

Defendant asserts that Plaintiff's argument that the jury's award of damages in the amount of $75,000 has no rational connection to the evidence does not require a new trial on the issue of liability, but only on the issue of damages, as sought by Defendant in its Motion for a New Trial on the Issue of Damages. (Def.'s Br. in Resp. and Opp. to Pl.'s Renewed Mot. For Directed Verdict at 8). Defendant further asserts that Plaintiff has cited no authority to support the argument that a new trial is required because the verdict is "shrouded in doubt". *Id.* at 9. Lastly, Defendant argues that Plaintiff offers no evidence to suggest that the jury's verdict was based on improper considerations, such as prejudice. *Id.*

The Court does not find any support for Plaintiff's assertions that the jury's verdict was based on questionable liability or was induced by prejudice. The parties agree that the jury's verdict of $75,000 is not supported by the evidence, however, a new trial on all issues is not warranted.

### B. Counter-Plaintiff's Motion for a New Trial on the Issue of Damages

"The scope of review of a damage award is extremely narrow. A trial court may not grant a new trial on the ground of insufficient damages unless the jury verdict is one that could not reasonably have been reached. *Walker v. Bain*, 257 F.3d 660, 647 (6th Cir. 2001), citing *Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996). A new trial for inadequate damages is appropriate "only where the evidence demonstrates that the jury awards damages in an amount substantially less than unquestionably proved by the plaintiff's uncontradicted and undisputed evidence." *Walker*, 257

8

F.3d at 647; *See Anchor*, 94 F.3d at 1021.

Defendant asserts that it was the only party to offer testimony or evidence on damages and the following evidence was presented at trial: (1) Ms. Jacobsen testified that the current data acquisition system used by General Motors was old and in need of replacement. (Counter-Pl.'s Mot. For a New Trial at 2, Ex. C, 39); (2) Ms. Jacobsen testified that the base, brake and chassis combined have between 60 and 120 systems. *Id.* Ex. C, 41; (3) Mr. Fife testified that Ms. Jacobsen was the point person for Instrument Knowledge Center and the person with whom A-Dat had interacted to sell data acquisitions systems to General Motors in August, 2003. *Id.* at 3; (4) Dr. Reinhold Badmann testified that at least 64 units would have been sold to General Motors had BS2 not interfered with A-Dat's relationship with General Motors. Dr. Badmann further testified that A-Dat would receive a net profit of $15,000.00 per unit. *Id.* at 3.

There was no impeachment or contradiction of Dr. Badmann's damage calculations or Ms. Jacobson's testimony concerning the number of units General Motors would have purchased in light of the outdated units. Similarly, BS2 presented no evidence to refute either number of sales or amount of lost profits.

Plaintiff did not directly address the evidence regarding damages, but reiterated the contention that Defendant failed to establish the elements of tortious interference. With respect to Defendant's Motion for a New Trial on the Issue of Damages, Plaintiff stated, "[i]n essence, the proofs presented an all or nothing alternative to the jury. Either zero or not less than $900,000." As shown by this statement and the arguments made in Plaintiff BS2's Brief in Support of Renewed Motion for Directed Verdict or In the Alternative For a New Trial, Plaintiff agrees that the jury award of $75,000 on Defendant's claim of tortious interference is not supported by the evidence.

The Court finds that the jury award of $75,000 is not rationally connected to the damages evidence presented at trial. Ms. Jacobson testified that General Motors would have purchased at least 60 units. Dr. Badmann testified that at least 64 units would have been sold to General Motors had Counter-Defendant not interfered with Counter-Plaintiff's relationship with General Motors. Dr. Badmann further testified that Defendant would have received a net profit of $15,000 per unit. There is no dispute as to this testimony and no evidence was presented to the contrary. The evidence shows that the minimum number of units that Counter-Plaintiff would have sold to General Motors is 60 and Defendant would have realized profits of $15,000 per unit. Because the jury's award bears little relation to the evidence on damages and "federal courts are prohibited by the Seventh Amendment from granting additur, which would increase the amount of the jury's award," a new trial on the issue of damages is appropriate. *Tezak v. Montgomery Ward & Co. Inc.*, 33 Fed.Appx. 172, 177-78 (6th Cir. 2002) (citing *Dimick v. Schiedt*, 293 U.S. 474 (1935)).

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Renewed Motion for Directed Verdict Pursuant to Fed. R. Civ. P. 50(b) or in the Alternative For a New Trial **[Docket No. 23, filed April 26, 2006]** is DENIED.

IT IS FURTHER ORDERED that Counter-Plaintiff's Motion for a New Trial on the Issue of Damages **[Docket No. 24, filed April 26, 2006]** is GRANTED.

IT IS ORDERED THAT the parties shall appear for a status conference on May 14, 2007,

at 3:15 p.m.

                                                s/ DENISE PAGE HOOD

                                                DENISE PAGE HOOD
                                                United States District Judge

DATED: May 19, 2007


       I hereby certify that a copy of the foregoing document was served upon counsel of record on May 19, 2007, by electronic and/or ordinary mail.

                                                S/William F. Lewis
                                                Case Manager