UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BS2 MULTIDATA GMBH,

    Plaintiff/Counter-Defendant,

                                          Case No. 04-74394

v.

                                          HON. DENISE PAGE HOOD

A-DAT CORPORATION,

    Defendant/Counter-Plaintiff.
_____/

## MEMORANDUM OPINION AND ORDER

**I. INTRODUCTION**

This matter is before the Court on Defendant A-Dat Corporation's Motion in Limine, filed July 12, 2007. Plaintiff BS2 Multidata GmbH filed a Response on July 26, 2007 and Defendant filed a Reply on August 2, 2007. On August 14, 2007, Plaintiff filed a Motion for an Ex Parte Order to Correct Record, requesting that the Court enter an Ex Parte Order granting Plaintiff's Motion for Leave to Correct the Record and to File a Supplemental Brief in response to Defendant's Motion in Limine. On August 15, 2007 the parties appeared for a hearing on Defendant's Motion in Limine.

**II. STATEMENT OF FACTS**

This matter was previously tried by a jury on April 3-7, 2006 and the jury rendered a verdict on April 10, 2006. The jury found Defendant, A-Dat Corporation ("A-Dat"), liable to Plaintiff, BS2 Multidata GmbH ("BS2"), on Plaintiff's breach of contract claim and awarded Defendant damages, in the amount of $140,232.77 Euros. The jury found Plaintiff liable to Defendant on Defendant's tortious interference with advantageous business relationship counterclaim, in the amount of $75,000.00.

On May 19, 2007, the Court denied Plaintiff's Renewed Motion for a Directed Verdict or in the Alternative for a New Trial and granted Counter-Plaintiff's Motion for a New Trial on the Issue of Damages. The Court held the following:

> the jury award of $75,000 is not rationally connected to the damages evidence presented at trial. Ms. Jacobson testified that General Motors would have purchased at least 60 units. Dr. Badmann testified that at least 64 units would have been sold to General Motors had Counter-Defendant not interfered with Counter-Plaintiff's relationship with General Motors. Dr. Badmann further testified that Defendant would have received a net profit of $15,000 per unit. There is no dispute as to this testimony and no evidence was presented to the contrary. The evidence shows that the minimum number of units that Counter-Plaintiff would have sold to General Motors is 60 and Defendant would have realized profits of $15,000 per unit. Because the jury's award bears little relation to the evidence on damages and "federal courts are prohibited by the Seventh Amendment from granting additur, which would increase the amount of the jury's award," a new trial on the issue of damages is appropriate. *Tezak v. Montgomery Ward & Co. Inc.*, 33 Fed.Appx. 172, 177-78 (6th Cir. 2002) (citing *Dimick v. Schiedt*, 293 U.S. 474 (1935)).

(Amended Mem. Opinion and Order at 10). Accordingly, the instant Motion relates to the new trial on the issue of damages.

## III. APPLICABLE LAW & ANALYSIS

### A. Motion in Limine

Under the Federal Rules of Evidence, the first step for the trial court is to determine whether the evidence sought to be admitted is relevant. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Evidence 403 excludes relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of the issues.

Additionally, Federal Rule of Evidence 404(b) excludes the introduction of evidence

regarding "other crimes, wrongs, or acts" to prove character, but this evidence may be admissible for another purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b).

Defendant argues that the only issue relevant to the new trial on damages is the amount of A-Dat's damages. Defendant brings the instant Motion in Limine to prevent BS2 from addressing the following issues:

> (i) disputing or questioning the jury's finding that BS2 caused GM to disrupt or terminate its relationship with A-Dat; (ii) disputing or questioning the jury's finding that A-Dat was damaged by BS2's intentional wrongful conduct or; (iii) introducing or referring to evidence of BS2's already-adjudicated breach of contract claim and judgment.

(A-Dat Corp.'s Mot. in Limine at 5). Defendant maintains that the introduction of evidence on the above issues would be irrelevant, prejudicial and misleading. Defendant asserts that the jury should be instructed generally in the following way -

> the parties have previously had a trial, where they presented evidence to a jury and, that after the trial, a jury has already found that BS2 intentionally and improperly interfered with A-Dat's contractual or business relationship with General Motors, causing GM to disrupt or terminate its relationship with A-Dat, and that A-Dat was damaged as a result of this improper conduct by BS2. You are to accept these findings as undisputable fact. Your only charge is to determine the amount of damages which A-Dat suffered as a result. How much?

(A-Dat Corp.'s Mot. in Limine at 5).

Defendant, however, asserts that the Court should permit the introduction of sufficient background evidence relating to A-Dat's advantageous business and contractual relationship with General Motors, and the damages which followed from BS2's tortious interference, such that the jury can quantify damages.

3

Plaintiff responds that the following introductory instruction should be provided to the jury:

> In a previous trial, the jury determined that A-Dat had an advantageous business relationship with General Motors and that BS2 improperly interfered with that relationship. However, the jury failed to make a finding of what damages A-Dat suffered - IF ANY - as a result of that interference. Your responsibility in this case is to listen to the evidence and make a determination of whether A-Dat suffered damages as a result of BS2's improper interference with its relationship at General Motors and if so the amount of such damages.

(BS2's Br. in Resp. at 14). Plaintiff argues that evidence at the new trial on damages should include the following categories:

(1) At any relevant time, was there Director Level approval at GM for the procurement of data acquisition systems for the departments with which A-Dat was working?

(2) Without the development of a middle-ware driver to integrate MATLAB or LABVIEW, would GM have purchased any INTEGRA systems and, if so, how many?

(3) Did the fact that A-Dat was unable to supply the Dasylab or ME5 middle-ware contribute to GM's decision not to buy additional INTEGRA systems?

(4) Did the fact that Mr. Sopoci's group at GM had no funding authority contribute to GM's decision to not buy additional INTEGRA systems?

(5) Whether the inability of BS2 and A-Dat to resolve the list of "major" issues relating to shunt calibration, screen refresh and the 5th wheel mechanism was the reason GM did not purchase any additional INTEGRA systems from A-Dat?

(6) Whether the fact that Ms. Jacobson never recommended to the IKC that more INTEGRA systems be purchased was the reason why GM did not purchase any additional INTEGRA systems from A-Dat?

(7) If Virginia Jacobson had recommended the purchase of the INTEGRA systems, would "upper management" at GM have followed and implemented her recommendation; in addition, who at GM had the authority to make the ultimate decision; was funding in place to purchase any systems?

(8) Whether because as of April 2006, the IKC had not yet selected a vendor or purchased any data acquisition systems, the actions of BS2 were the proximate cause of A-Dat's alleged damages.

(9) Did the fact that BS2 INTEGRA system was not a "modular" style data acquisition system cause GM to not purchase any additional INTEGRA systems from A-Dat?

(10) Were there budgetary or other reasons why GM deferred replacing the GPDA systems which Jacobson testified were obsolete in 2004 until April 2006 and beyond; and, if so, was the interference committed by BS2 the proximate

cause of A-Dat's alleged damages?
(11) If GM had determined to purchase INTEGRA systems, what would have been the terms of the sale; what would have been the gross selling price; would there have been a volume discount; what would be the price for all related component parts; what overhead would have been associated with the handling of the order; over what period of time would the acquisition have occurred, etc.?
(12) Have the groups at GM with which A-Dat was working purchased any data acquisition systems since 2004 and, if so, are they comparable to the systems A-Dat was offering in 2004 in terms of functionality and price; if not, were the actions of BS2 the proximate cause of A-Dat's damages?

(BS2's Br. in Resp. at 14-15). Plaintiff argues that the issue of A-Dat's damages is so interwoven with liability that the former cannot be submitted to the jury without the latter and both questions must be re-tried. *See Stanton by Brooks v. Astra Pharmaceutical Products, Inc.*, 718 F.2d 553, 576 (C.A. Pa. 1983) (holding that a partial trial on damages is not proper where there is reason to believe that the verdict represents a compromise among jurors with different views on whether a party was liable); *Mekdeci By and Through Mekdeci v. Merrell Nat. Laboratories, a Div. Of Richardson-Merrell, Inc.*, 711 F.2d 1510, 1513 (C.A. Fla. 1983). Plaintiff submits that because the jury awarded Counter-Plaintiffs less than one tenth of the amount sought and the jury requested clarification on various issues, there is evidence of a compromise verdict. Plaintiff further argues that Defendant cannot prove that Plaintiff's actions were the proximate cause of the damages alleged.

In response, Defendant asserts that Plaintiff is inappropriately attempting to reargue issues that have already been determined by the Court in its May 19, 2007 Amended Memorandum Opinion and Order. Specifically, Defendant argues Plaintiff seeks to overturn the jury's findings of causation and Plaintiff attempts to reargue the theory that the jury's verdict should be set aside because of purported confusion. The Court finds merit in Defendant's argument that Plaintiff is attempting to re-litigate issues that have already been determined by the Court. A new trial on all

issues is not appropriate, as determined by the denial of Plaintiff's Motion for a New Trial, and causation need not be re-litigated for a proper determination of damages. However, background evidence surrounding the tortious interference on the part of BS2 is relevant to the jury's determination of damages.

Both parties discuss two cases - *Muscletech Research and Development Inc. v. East Coast Ingredients, LLC*, 2007 WL 655755, W.D.N.Y., Docket No. 00-CV-753A (February 26, 2007) and *Trident Inv. Management, Inc. v. Amoco Oil Co.*, 194 F.3d 772 (7th Cir. 1999) - for similar propositions. Defendant argues these cases support the contention that limited background evidence of the circumstances giving rise to damages, here tortious interference on the part of BS2, should be introduced so that the jury can properly determine damages. Plaintiff argues that these cases support the position that Plaintiff should be permitted to introduce evidence that it was not the actual and/or proximate cause of the alleged damages suffered by A-Dat. In *Muscletech*, a patent infringement action, defendants were found liable pursuant to a partial motion for summary judgment on the first, second and third causes of action. As damages was the only issue remaining for the court to determine on plaintiff's subsequent motion for summary judgment, the court permitted the introduction of evidence relating to the invoicing and distribution of the counterfeit products to aid in the court's determination of lost profits. *Muscletech Research and Development Inc.*, 2007 WL 655755, at *5-6. *Trident* involves a shopping center owner seeking damages from the service station owner for patroleum contamination to the subject property. In *Trident*, despite the fact that the parties stipulated to defendant's liability, the court permitted defendant to introduce evidence that the decrease in market value of the subject property was a result of events unrelated to defendant's actions.

*Muscletech* and *Trident* are factually and procedurally distinguishable and the Court does not find them particularly persuasive with respect to the case at hand. In the instant case, a jury previously determined all of the elements of the tort of intentional interference with a business relationship. As such, the only relevant issue is the amount of damages. Trident is persuasive to the extent that the court permitted the introduction of evidence that other factors may have contributed to the amount of plaintiff's damages. However, *Trident* does not support Plaintiff's position that the issue of causation should be re-adjudicated.

The Court finds that Defendant's proposed instruction to the jury is more appropriate than that provided by Plaintiff. *See supra* pp. 3-4. Defendant's proposed instruction, with supplemental language provided by the Court, will be used at trial. The Court further finds that the parties are precluded from addressing the first two issues presented by Defendant in the Motion in Limine -

> (i) disputing or questioning the jury's finding that BS2 caused GM to disrupt or terminate its relationship with A-Dat; (ii) disputing or questioning the jury's finding that A-Dat was damaged by BS2's intentional wrongful conduct . . .

(A-Dat Corp.'s Mot. in Limine at 5). However, the Court will incorporate issue (iii) into a preliminary instruction to provide the jury with background as to the current posture of the case. ("(iii) introducing or referring to evidence of BS2's already-adjudicated breach of contract claim and judgment.").

A jury previously determined that Defendant proved all of the elements on its claim of tortious interference, which includes: (a) A-Dat had a business relationship with expectancy with GM; (b) The business relationship or expectancy with GM had a reasonable likelihood of future economic benefit for A-Dat; (c) BS2 knew of A-Dat's business relationship or expectancy with GM at the time of the claimed interference; (d) BS2 intentionally interfered with A-Dat's business

relationship or expectancy with GM; (e) BS2 improperly interfered with A-Dat's business relationship or expectancy with GM; (f) BS2's conduct caused GM to disrupt or terminate the business relationship or expectancy with A-Dat; (g) A-Dat was damaged as a result of BS2's conduct. (Stipulated Joint Combined Jury Instructions, Docket No. 33-6; Special Jury Verdict Form, Docket No. 21). The parties will not be permitted to relitigate any of these issues, as they have previously been determined by a jury in the affirmative.

With respect to the twelve issues presented by Plaintiff, the Court finds that category (11), as presented, is relevant to the jury's determination of the *measure*, as opposed to *cause*, of damages and does not undermine the findings of the jury in the previous trial. The Court further finds that categories (10) and (12) may be relevant, however, must be amended to exclude the proximate cause language, as causation was previously determined. The Court would like to emphasize, however, that the parties may introduce evidence on these issues only inasmuch as they bear on damages and such evidence may not be introduced for the purpose of re-litigating the issue of causation.

### B. Realignment

Defendant further argues that A-Dat and BS2 should be realigned as parties for the new trial on damages and the order of proofs at trial realigned accordingly. Defendant acknowledges that BS2 commenced the underlying suit, however, argues that the underlying claims have been adjudicated and have no relevance to the new trial on damages. Defendant asserts that A-Dat is the only party bearing the burden of proof and therefore realignment is appropriate. *See Dishman v. American Gen Assurance Co.*, 193 F.Supp.2d 1119, 1128 (N.D. Iowa 2002) ("ordinarily, the trial court extends the privilege of opening and closing the case to the party that has the burden of proof").

8

A district court has broad discretion to set the order of proof at trial. *Id.* (citing *Skogen v. Dow Chemical Co.*, 375 F.2d 692, 704, 706 (8th Cir. 1967)). In *Anheuser-Busch, Inc. v. John Labatt, Ltd.*, 89 F.3d 1339 (8th Cir. 1996), the court found that the trial judge did not abuse its discretion in denying the defendant's motion to realign the parties where each party bore the burden of proof on the remaining claims and disposition of one claim did not necessarily dispose of the other claims. The court held that the district court "understandably chose to allow the actual plaintiff, the party that filed the lawsuit, to proceed first." *Anheuser-Busch, Inc. v. John Labatt, Ltd.*, 89 F.3d at 1344. The Court finds that realignment is not necessary, however, because A-Dat has the burden of proof on damages, A-Dat will present its proofs first. To avoid possible jury confusion, the Court will explain, through a preliminary instruction, the current alignment of the parties, particularly that A-Dat is proceeding with respect to a counter-claim in the previous trial.

C.  **Ex Parte Motion**

Plaintiff's Ex Parte Motion requests that the Court consider information from Plaintiff's damages expert, Neil Steinkamp, CCIFP, of Stout Risius Ross. Plaintiff's Motion includes a letter from Mr. Steinkamp explaining why, in his opinion, an expert mut be allowed to consider causation to determine damages. Attached to the Motion are a number of treatises on litigation and accounting. The Court finds that Mr. Steinkamp's expert testimony on the province of an expert in a damages case, particularly as it relates to causation, is not necessary in this case. Plaintiff will not be permitted to put causation at issue through its expert. Any concerns may be cured through the Court's instructions and charge to the jury.

Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion in Limine **[Docket No. 33, filed July**

**12, 2007]** is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for an Ex Parte Order to Correct Record **[Docket No. 38, filed August 14, 2007]** is DENIED.

s/ DENISE PAGE HOOD<br>
DENISE PAGE HOOD<br>
United States District Judge

DATED: August 28, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 28, 2007, by electronic and/or ordinary mail.

S/William F. Lewis<br>
Case Manager